A. P. SHULL ET AL., APPELLANTS, v. JOHN KALLAUNER ET AL., RESPONDENTS.[*]

Kansas City Court of Appeals.    December 5, 1927.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2422, p. 600, n. 6; Attachment, 6CJ, section 61, p. 55, n. 17; Witnesses, 40Cyc, p. 2584, n. 32; p. 2732, n. 76.

*Sam Shull* and *Miles Elliott* for appellants.

*Ardey Gubbert* and *Randolph & Randolph* for respondent.

WILLIAMS, C.—This is a suit by attachment and was instituted in the circuit court of Buchanan county. The petition was in six counts. Each count was a suit upon a promissory note. The notes aggregated $3544.44. Several grounds of attachment were stated in the affidavit. However, the case went to trial upon the ground that defendants "have fraudulently conveyed and assigned their property so as to hinder and delay their creditors."

Defendants filed a plea in abatement. A trial was had, a verdict was rendered in favor of defendant upon the plea in abatement. Thereafter, by agreement on the merits, a judgment was entered in favor of the plaintiffs. The controversy had to do with the conveyance of a piece of land to defendants' son Theodore. It was contended that the son Theodore had loaned the father money. According to the testimony of the father the son Theodore had loaned them large sums of money. Defendant testified that the son loaned the money thus: "Some liberty bonds but most of it was in cash, some of it in $200 bills but most of it in $100 bills; that the son always carried lots of money in his pocket." The son testified that he gave this father $4000 in cash and some liberty bonds, most of it in $100 bills. The son testified that he never carried money in banks. One man paid him $1800 just before he left Eldorado; that this payment of $1800 was in cash. He did not know where the man who paid him the $1800 was living at the time of the trial. When anybody paid him he turned the money into cash and brought the cash with him to St. Joseph. He never took any receipts for money paid; he never exercised any control over the land which was deeded to him. As stated, judgment went against plaintiffs on the attachment, and from that judgment plaintiffs, after an unsuccessful motion for a new trial, have brought the case here on appeal.

At the threshold of the case it is urged that the appeal should be dismissed because no term bill of exceptions was filed. The abstract of the record filed in this court recites that: ". . . within the time allowed by law, plaintiffs presented to the judge of said court who tried the cause, their bill of exceptions to the actions and rulings of the court. and the same was by the court and by said judge there-

of, found to be correct and allowed, signed, sealed, filed and made a part of the record in said cause.''

Under the amendment to Rule 15 and adopted by the Kansas City Court of Appeals on March 3, 1924, it is required that a notice be served in writing on appellant ten days after appellant's abstract of the record was served on respondent or no question of the sufficiency can be raised.

Appellant's abstract of the record shows that it was served on the 15th day of September, 1927. The service copy of the motion to dismiss shows it was served on the 28th day of September, 1927. From these dates it shows that the service of the motion to dismiss was not within ten days of the service of the abstract. Therefore under the rule of this court we are not at liberty to consider the motion to dismiss.

It is contended by appellant that reversible error was committed in attempting to show that witness Max Handler had gone into bankruptcy. It was frankly stated, in the trial court, that the purpose of this cross-examination was to discredit the witness. The question then resolves itself into whether or not a man can be discredited by going through bankruptcy; that is, by having taken advantage of a legal right. It could hardly logically be stated that taking advantage of any right which the law gives would be discreditable. Would it be contended that the pleading of the Statute of Limitations could be given in evidence for the purpose of discrediting a witness and effecting his credibility? We think not. We agree with the Supreme Court of the State of Massachusetts when they said in Commonwealth v. Homer, 127 N. E. 517, l. c. 521: ''If the district attorney believed that a petition in bankruptcy proceedings had been filed, it was an attempt to establish an immaterial but harmful fact in an improper way. . . .. In either event, whether the defendant's bankruptcy was believed to be false or true, an unfair advantage was taken in putting the questions.'' As bearing out the principle advanced, the Supreme Court of the State of New York held that it was improper for the purpose of discrediting a witness to show on cross-examination that the witness is a habitual litigant. [Palmeri v. Manhattan Ry. Co., 133 N. Y. 261, 30 N. E. 1001.] We think the attempt to prove by the witness that he had gone into or through bankruptcy is error.

It is next contended that the court erred in refusing to allow the witness to be examined from witnesses' deposition taken in the case. It seems that the deposition was exhibited to the witness; the witness was asked whether or not he had made the following answer to the question therein asked. This manner of examination was objected to and sustained by the trial court.

The case of Littig v. Urbauer-Atwood Heating Co., 292 Mo. 226, was doubtless followed by the circuit court in this ruling. However,

whether or not the circuit court properly interpreted the holding in Littig v. Urbauer-Atwood Heating Co., supra, is immaterial, as the Supreme Court in the later case of Peppers v. St. Louis-San Francisco Ry. Co., 295 S. W. 757, l. c. 762 says: "In impeaching a witness by use of a deposition, we declare it the proper procedure, after having the witness identify the instrument by identifying his signature, and after exhibiting to the witness the deposition, if he asks to see it, to read to the witness from the deposition a question, or questions, and answer, or answers, and ask him if he did not so testify; and such procedure may be repeated. This permits the witness to explain the answer, if desired. Then the impeaching party must offer and read in evidence all the detail matter about which he interrogated the witness. Following this, the other party may examine the witness to rehabilitate his testimony, if he deems it necessary or desires so to do, and may offer the whole deposition or such portions as desired, if not otherwise irrelevant or incompetent. If the witness has not signed the deposition, he may be impeached as for any other parol statement, preferably, however, by having the reporter taking the deposition read his original shorthand notes. We think the trial court erred in refusing to permit this method of examination."

We think under the ruling in the Peppers v. St. Louis-San Francisco Ry. Co., supra, case, the court erred in refusing to permit the examination from the deposition.

It is contended that the court erred in the giving of instructions. Under the authorities it seems that under the seventh clause of the attachment statute, the intentions of the grantee in the conveyance has no bearing. [Sauer v. Behr, 49 Mo. App. 86; Barry County Bank v. Russey, 74 Mo. App. 651; Nat. Tube Works Co. v. Machine Co., 365; Stewart v. Cabanne, 16 Mo. App. 517.]

As the case will have to be retried, it is not necessary to go further into the instructions complained of.

Judgment reversed and the cause remanded. *Frank, C.,* concurs.

PER CURIAM:—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.