LULA E. DENT, APPELLANT, v. MONARCH LIFE INSURANCE CO., RESPONDENT.—98 S. W. 123.

Kansas City Court of Appeals. November 9, 1936.

*Owen & Thurlo* and *Johnson, Garnett & Quinn* for appellant.

*Hart & Joyce* for respondent.

BLAND, J.—This is a suit on an accident insurance policy. There was a trial before a jury, resulting in a verdict and judgment in favor of the defendant. Plaintiff has appealed.

The facts show that on November 8, 1934, plaintiff received an injury, of a nature covered by the terms of the policy, to her left arm, while attempting to change a tire on her automobile. The policy was issued on December 29, 1932. The removal premium became due on January 4, 1934; this was paid by the plaintiff and the policy was thereby continued in force for one year from that date.

The action arose in the justice court. There was no pleading on the part of the defendant. The defense at the trial in the circuit court was that the policy sued on was canceled by the defendant on May 22, 1934. The policy provided:

"The Company may cancel this policy at any time by written notice delivered to the insured or mailed to his last address, as shown by the records of the Company, together with cash or the Company's check for the unearned portion of the premiums actually paid by the insured, and such cancellation shall be without prejudice to any claim originating prior thereto."

According to the evidence of the defendant, on May 24, 1934, it mailed to the plaintiff, at her last address as shown on the records of the company, a written notice of cancellation of the policy and enclosed therewith the company's check of the same date, drawn on the Union Trust Company of Springfield, Massachusetts. This check was for $5.89, being the amount of the unearned premium, and was made payable to plaintiff.

Plaintiff testified that she did not receive this letter. The court sustained the objection to a question propounded to her by her attorneys as to whether the unearned premium had ever been tendered her.

Complaint is made of the giving of defendant's Instruction No. 2, which told the jury that if they believed that defendant mailed to the plaintiff, at her last address as shown by the records of the company, a letter containing a notice of the cancellation of the policy and the company's check in the sum of $5.89 and that this sum was the proper amount of the unearned premium, their verdict should be for the defendant "even though you may find and be-

lieve from the evidence that said letter was not, in fact, received by'' plaintiff.

Complaint is also made of the refusal of plaintiff's instruction which sought to tell the jury that the mailing of the letter and the check was not a legal tender of the unearned premium, unless plaintiff ''received said draft, accepted and cashed the same.''

The general rule is that there can be no cancellation of a policy of insurance without tender of the unearned premium. [Payne, et al. v. President, etc. of Ins. Co. of North Am., 156 S. W. 52; Browne, et al. v. Presidential Fire & Marine Ins. Co., 24 S. W. (2d) 206.] We do not understand that defendant disputes that it was required to tender the unearned premium in the case at bar. As we view it, the only question to be determined is whether, in view of the provisions of the policy, the mailing (if it was mailed) of the notice and the check of the company for the unearned premium to the plaintiff constituted tender of the premium so as to effect a cancellation of the policy.

There is no good reason advanced by the plaintiff why the plain provisions of the policy should not be enforced in this case. The rule is well established that courts will not attempt to make contracts for the parties but will enforce them as written. The parties in the contract before us agreed, in effect, that the government, in its business of operating the mails, should constitute the agent of the insured for the purpose of receiving the unearned premium. Of course, if that agency failed actually to deliver the check to the plaintiff, it was the failure of her agency and not that of the company. There was no reason why the parties could not agree that the tender of the company's check should constitute a good tender. There is no dispute but that the sum of $5.89 was the proper amount of the unearned premium. The court by its instructions left to the jury to determine, in effect, whether the defendant actually complied with the provisions of the policy in reference to mailing the notice and check for the unearned premium which, under the circumstances, was as favorable a submission to plaintiff as she was entitled. [State v. Hudson, 222 S. W. 1049, 1052.]

Plaintiff points out that defendant did not produce the cancelled check and did not offer any testimony that the unearned premium had actually reached the hands of the plaintiff and did not tender the unearned premium either before or during the trial. The mailing of the premium raises an inference that it was received but, from what we have said, its actual receipt by plaintiff, personally, was not necessary and for this reason, no doubt, defendant did not feel called upon to show anything further than its mailing. If the check was not cashed and is lost, no doubt defendant still owes the amount of the unearned premium. But we are now concerned solely with a question of tender, and one sufficient to effect a cancellation

of the policy before any unpaid loss was sustained thereunder. We think that, for this purpose, the tender was sufficient.

Although there was no pleading filed on behalf of the defendant, the record discloses that the real defense to the case was that of cancellation of the policy. However, a large part of the cross-examination of plaintiff was concerning numerous other claims that she had had growing out of injuries other than the one involved in this suit. This character of cross-examination was objected to by plaintiff and exception saved to the rulings of the court allowing it. In connection therewith the court permitted defendant to show that plaintiff suffered an abdominal injury in 1933 as the result of a collision of an automobile, which she was driving, with a cow and asserted a claim for such injuries against that defendant and another insurance company; that she at one time asserted a claim against the Kroger Grocery Company for damages occasioned by food poisoning; that she made a claim against the Missouri Power & Light Company for damages for personal injuries resulting in broken ribs. She was asked concerning whether she had ever filed a claim against the Royal Insurance Company. Also concerning a claim that she filed against the Pioneer Insurance Company, which she made at the time of the automobile collision with the cow. She was also asked about a claim against the C. B. & Q. Railroad Company, for an injury to her ankle, which claims she testified was settled.

While the extent to which cross-examination of a witness may go is largely left to the discretion of the trial court (State v. Mitchell, 96 S. W. (2d) 341, 342) that discretion can be abused and, we think, it was abused in this case. Defendant, in its original brief filed here, states that the "real defense to this case was that of cancellation." However, in its supplemental brief it says: "The facts showed the claim was a fraudulent one" and that the cross-examination of plaintiff on these collateral matters was for the purpose of establishing the fraudulent nature of the action. An examination of the record discloses that no effort was made by defendant to show that this claim was a fraudulent one except by the cross-examination that we have alluded to. In fact, during this examination counsel for defendant stated that it was entitled to show on the proposition "of fraud *generally* the fact this woman, over a period of years, had sued at least a dozen or fifteen different individual insurance companies, public service companies, private utilities companies, and nearly everybody in that community, even a Kroger Grocery Company for eating a can of contaminated chili." (Italics ours.) No effort was made in any other way to show the claim in suit to be fraudulent. Of course, fraud cannot be shown by the introduction of collateral matters of this kind, as they, of themselves, do not disclose any fraud practised by the plaintiff in the matter

before the court. She was entitled to make as many claims in the other matters or file as many lawsuits as the circumstances justified. The injuries that formed the basis for the other claims were different from the one asserted in the case at bar and the latter had no connection with them. We have examined the cases cited by the defendant and find them not in point. These cases are similar to that of State v. Mitchell, supra, cited by the defendant. In that case the defendant was a witness and it was held that it was proper to ask defendant's *character witnesses* if they had heard rumors of certain misconduct of the defendant unconnected with that with which he was charged in that case. The court said, 1. c. 341: "If the witness had admitted that he had heard of such alleged acts of misconduct, such admissions would tend to weaken his testimony that the appellant's reputation was good." Of course, the situation in that case is not similar to the one in the case at bar.

This testimony in the case at bar was very prejudicial to the plaintiff and clearly had nothing to do with the case. We are of the opinion that the court abused its discretion in admitting it. [Dietz v. So. Pac. Ry. Co., 28 S. W. (2d) 395.]

However, it is claimed that no proper objection was made to this character of cross-examination.

The objections made to the questions propounded to plaintiff, relative to her other claims and suits, were that "that has nothing to do with the injury in this case." "It is to prejudice the minds of the jury for some other claim, and couldn't be for any other purpose." "It does not touch any issue in this case." "It doesn't have any bearings on the issues in this case." "That couldn't possibly bear on the issues in this case." "These questions cannot be within the realm of the case." "If she had some other litigation certainly wouldn't have any bearing here. If she had a case, she had a right to sue." "That has no connection whatever with this lawsuit." "That constitutes no defense to this action." "It wouldn't constitute a defense or determine any issue involved."

Why none of the objections made by the plaintiff was broad enough to save the point is not pointed out by the defendant. While they might have been made in a more formal manner, we think that there were sufficient objections made to call the court's attention to the grounds upon which they were based. The cases of State ex rel. v. Diemer, 255 Mo. 336; Herrin v. Stroh Bros. Del. Co., 263 S. W. 871; Nelson v. Cowles, 193 S. W. 579, and like cases cited by the defendant are not in point. We think that the court could not have failed to understand what was meant by the objections offered in the case at bar and that there were sufficient objections made to preserve the point. Plaintiff, having once made the objection, it was unnecessary to repeat it, although we find that plaintiff was

objecting to nearly every question asked concerning these collateral matters.

From what we have said the judgment should be reversed and the cause remanded, and it is so ordered. All concur.