Ray MARTINEZ, Appellant,

v.

Frank WILLIAMS, Appellee.

No. 13180.

Court of Civil Appeals of Texas.

Houston.

April 17, 1958.

Rehearing Denied May 8, 1958.

McGregor & Sewell, Houston, attorneys, Burke M. Martin, Ben G. Sewell, Houston, of counsel, for appellant.

Ed Tynes, Helm, Jones, McDermott & Pletcher, Albert P. Jones, Raymond L. McDermott, Houston, for appellee

WERLEIN, Justice.

Appellee, Frank Williams, sued Ray Martinez, appellant, to recover damages for personal injuries sustained by him as the result of being struck by appellant's car as he was crossing from the northwest corner to the northeast corner of the intersection of Main Street and Congress Avenue in the City of Houston. On the basis of the jury's affirmative findings to the discovered peril issues, being the only issues on liability submitted, the court entered judgment for appellee in the sum of $4,000 for lost earnings and earning capacity, and pain and suffering, and $100 for medical expenses. Appellant has duly perfected his appeal to this Court.

Appellant's First and Second Points of Error are that the trial court erred in overruling appellant's motion for judgment non obstante veredicto and in refusing to enter judgment for appellant because there was no evidence to support the affirmative findings on discov-ered peril; and that the court erred in failing to grant a new trial because the findings of the jury on the issues of discovered peril are so contrary to the overwhelming preponderance of the evidence as to be manifestly wrong.

There is evidence that appellee started to walk across Main Street, as above stated, at about 4 o'clock p. m. on September 18, 1955, with a green light facing him; that Main Street is approximately 60 feet in width with a double stripe or line marking the center thereof, and Congress Avenue is also approximately 60 feet in width, crossing Main Street at right angles, in downtown Houston; that Main Street has six lanes, three for northbound traffic and three for south; that appellant's car was in the most easterly lane of traffic on Main Street and had come to a stop heading north at the unmarked crosswalk for pedestrians on the south side of Congress Avenue projected across Main Street; that there was also a car in the lane to the left of appellant and, according to some of the testimony, a car in the second lane to appellant's left also, and that such cars had stopped awaiting the change of the traffic light from red to green; that appellant first saw appellee when appellee was in the middle of Main Street; that upon appellee reaching the center of Main Street the green light turned to amber and he then began to run, or hobble, as he expressed it, as best he could in an easterly direction to continue his way across Main Street; that the light facing him turned red after he had gone about the width of a car to the east of the double stripe in the center of Main Street; that he saw the cars facing north start up, and he felt the only safe procedure was to run across the street in the direction he was going since if he stayed where he was other cars would have run over him; that appellant's car started upon his light changing from red to green; that at such time, according to appellee's testimony, appellee was just about the width of a

car east of the center line on Main Street; that the front right bumper of appellant's car struck appellee at the time appellee was nearing the east curb of Main Street, and when he was several feet to the north of the unmarked pedestrian crosswalk on the north side of Congress Avenue projected across Main Street; that the unmarked pedestrian crosswalks projected across Main Street were from 7 to 15 feet in width, according to various estimates. There was evidence from which the jury could find that after appellant discovered appellee's peril, he traversed a distance of from 74 to 90 feet from his starting position, since his car had to cross the crosswalk on the south side of Congress Avenue, the width of Congress, and then the crosswalk on the north side of Congress; that during the time appellant's car traversed such distance appellee ran or hobbled from a point a car's width to the east of the center of Main Street to a point near the east curb of Main Street, or a distance of approximately 20 feet; and that appellee was knocked, or rolled, some 15 feet from the point of impact. Appellee testified that if appellant had stopped a little bit or turned his wheel a little bit or eased up a little bit, he could have gotten out of the way.

Appellant testified that he never exceeded 10 or 15 miles per hour; that he started off in a normal manner and stayed approximately even with the two northbound cars to his left, and that when he had reached a point some 3 to 4 feet from the crosswalk on the north side of Congress Avenue he slammed on his brakes; that appellee was some 3 to 4 feet to the north of the unmarked crosswalk when struck; that at the time appellant slammed on his brakes the distance between him and appellee was 13 to 16 feet; and that he could stop his car going at a speed of 10 to 15 miles per hour within 4 to 5 yards (12 to 15 feet). The testimony was that there were no skidmarks on the pavement.

The jury might well have concluded that appellant discovered the danger of appellee when he first saw him in the middle of Main Street, undertaking to cross Main Street at a time when heavy afternoon traffic was headed in both directions. There was no obstruction to appellant's view as he started from his stopped position, and there was nothing to hinder appellant from keeping appellee continuously in view. Appellant admitted that he saw the appellee running to get across Main Street. He testified that when he put on his brakes he could see that appellee was in a dangerous position and that he put on his brakes because he figured it was an emergency situation. He stated, however, that at such time the distance between him and appellee was some 13 to 16 feet. The jury were at liberty to conclude that he actually discovered the perilous position of appellee prior to the time that he admitted that he did. Indeed, it might be presumed from the circumstances that as appellant drove his car in a northerly direction on Main Street he was looking ahead, and that appellee's perilous position as he undertook to run or hobble across the east portion of Main Street was apparent to appellant at all times from the time he started up from a stopped position, and that he took chances on appellee being able to get out of his way.

■ The law is well settled that a reviewing court will not disturb the verdict of the jury where there is some evidence to support the same, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him. Glenn v. Glenn, Tex.Civ.App., 183 S.W.2d 231, no writ history. See also Payne v. Smith, Tex. Civ.App., 268 S.W. 243, no writ history.

■ ■ The jury had a right to consider the evidence most favorably for appellee, rejecting all evidence favorable to appellant. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139. The jury had a right to accept part of each witness's testimony without accepting his testimony in its entirety.

In Southland Greyhound Lines, Inc., v. Richards, Tex.Civ.App., 77 S.W.2d 272, writ dismissed, the court held that a jury is not bound by a statement of the defendant as to when he discovered the danger of the plaintiff and as to the effort made by him to avoid the injury. See Quanah, Acme & Pacific Ry. Co. v. Eblen, Tex.Civ.App., 55 S.W.2d 1060, writ refused. In Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561, 562, the court made the following pertinent statement:

> "The quantum of proof required of the plaintiff on these elements of discovered peril in order to entitle him to have them submitted to the jury was such facts and circumstances as taken together with all reasonable inferences therefrom constituted some evidence of probative force of their existence. White v. White, 141 Tex. 328, 172 S.W.2d 295; Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725; Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256."

In such case the court referred with approval to the case of St. Louis Southwestern R. Co. of Texas v. Ford, Tex.Civ.App., 237 S.W. 655, 656, in which it was said:

> "The undisputed evidence shows that the wagon was struck near its rear end, and Ford was whipping his team to escape the threatened collision. This warrants the inference that a delay of even one or two seconds might have enabled Ford to escape. Such a delay might have been caused had the engineer used more diligence in applying his brakes."

■ In the instant case there was ample evidence supporting the answers of the jury to the issues on discovered peril.

Appellant's Third, Fourth and Fifth Points of Error complain of the action of the court in sustaining appellee's objections to certain medical records, or parts thereof, of Memorial Hospital on the ground that they were hearsay and opinions and conclusions of physicians. Exhibit D-3, which was excluded, being a "Report of Emergency Case", showed the following condition on admission: "Satisfactory. Hit by car. Small laceration (superficial) left parietal area. No evidence of any fractures or other injuries." Exhibit D-5, which was excluded and which purports to be the attending physician's summarized report, reads as follows:

"1. Sensitivity to achromycin (Kimmelstiel-Wilson disease)

"2. Essential Hypertension

"3. Retinal, hemmorhages due to nephros*chlos*is

"4. Diabetes mellitus

"5. Chronic Chorioretinitis uremia."

Exhibit D-6 entitled "Attending Physician's Summarized Report" was admitted with the exception of the physician's diagnosis, as follows: "Infected ulceration of left leg. Generalized secondary absorption diabetes. Pityriasis rosea."

Appellant's Fifth Point is to the effect that the court erred in sustaining appellee's objection to appellant's offer in evidence of the entire medical records of Memorial Hospital relating to appellee. As a matter of fact, appellee's objection was directed to the admission of any hearsay statements and opinions of doctors. Counsel for appellee conceded that all portions of the records from the hospital were admissible except those portions involving medical opinions or conclusions. The court admitted all of the hospital records into evidence with the exception of any "hearsay or conclusion or any statements pertaining to any opinions or conclusions." The court then invited appellant's counsel to read the portions of the records that he desired to introduce except the excluded portions.

This brings us to a consideration of whether Exhibits D-3, D-5, and D-6, which to some extent at least included opinions of doctors, were admissible.

Appellee contends that the medical records were not sufficiently proved. We have carefully examined the statement of facts and agree with the trial court that the routine hospital records were sufficiently proven under the provisions of Article 3737e, Vernon's Ann.Tex.St. and were admissible in evidence. The court admitted the same with the exception of the opinions and conclusions and diagnoses of doctors. The fact that the custodian did not have personal knowledge of the various items or contents of the record could be shown to affect its weight and credibility but not its admissibility under Section 2 of said Article.

The authorities are at variance as to the admissibility of hospital records consisting of diagnostic findings by attending physicians. Many courts hold that such findings are made as regular business entries and are therefore admissible provided the declarant appears to have the necessary qualifications to render an expert opinion. Other courts oppose the admission of medical diagnoses on the ground that opposing counsel would be deprived thereby of the opportunity for cross-examination. They point out that doctors frequently disagree when it comes to a diagnosis and hence medical opinions and diagnoses do not come within the inherent guarantee of accuracy of routine business entries.

In England v. United States, 5 Cir., 174 F.2d 466, 469, the court in excluding opinions of individual physicians based on a patient's past history and conduct, and their conclusion that he suffered from "mental deficiency, (organic brain disease)" stated:

"These we think are not contemporaneous records of events, but are expert opinions based in part on hearsay, with no opportunity for cross-examination."

For like effect, see New York Life Ins. Co. v. Taylor, 1945, 79 U.S.App.D.C. 66, 147 F.2d 297, 303 in which the court summarized:

"Hospital records are no different from any other kind of records kept in the regular course of business. They must be subjected to the same tests as to subject matter. Regularly recorded facts as to the patient's condition or treatment on which the observations of competent physicians would not differ are of the same character as records of sales or payrolls. Thus, a routine examination of a patient on admission to a hospital stating that he had no external injuries is admissible. An observation that there was a deviation of the nasal septum is admissible. Likewise, an observation that the patient was well under the influence of alcohol. But the records before us here are not of that character. The diagnosis of a psychoneurotic state involves conjecture and opinion. It must, therefore, be subjected to the safeguard of cross-examination of the physician who makes it. And accounts of selected items from interviews with patients must be subject to the same safeguard."

It makes no difference under Article 3737e, V.A.T.S., whether the hospital records come from a public or private hospital. See American General Ins. Co. v. Dennis, Tex.Civ.App., 280 S.W.2d 620, no writ history. In the present case there was evidence that Memorial Hospital is a private hospital.

The law does not appear to be settled in Texas as to the admissibility of hospital records consisting of medical opinions and conclusions and diagnoses, under Article 3737e, V.A.T.S. In Thompson v. Robbins, Tex.Civ.App. Texarkana, 297 S.W.2d 247, affirmed Tex., 304 S.W.2d 111, the court held that the trial court did not err in admitting the entire hospital records relating to appellee's hospitalization for his alleged injuries where the objection made was a general one and no particular entry or part of the record was objected to. Of course, we have no means of knowing whether

such records contained conclusions, opinions and diagnoses of physicians because no specific objection was made to the admission of the records.

In Pan American Ins. Co. v. Couch, 305 S.W.2d 819, writ ref., n. r. e., the same Court of Civil Appeals held that a physician's physical examination form, which had been filled out after the injuries for which the employee claimed compensation had been sustained, and which had been submitted on behalf of another employer for whom the employee subsequently went to work, was not admissible on the theory that the form was a business record, where the physician who had filled out the form was not available for cross-examination. The court stated that the report in question contained hearsay statements and medical opinions and conclusions which were prejudicial to the employee's case, and that if such report had been admitted in evidence, the employee would have been deprived of the valuable right to cross-examine said doctor on matters vital to his case. The court held that the trial court correctly refused to admit such report in evidence.

 We have concluded that factual statements made by physicians and contained in the hospital records are admissible in the same manner as factual statements made by nurses and other employees of the hospital in connection with the routine business of the hospital. For example, medical statements made as routine entries in the course of hospital business, consisting of reports of the patient's temperature, blood pressure, pulse, medicines and treatment prescribed, external bruises, skin rash, alcoholic breath, lacerations or injuries observable to persons generally, routine laboratory tests, expressions of pain, noticeable external physical marks or defects, and similar facts not involving medical opinions, should be admitted. On the other hand, where the statement of the physician consists of an opinion or a conclusion or of a diagnosis based upon his medical examination or findings of conditions not obvious or patently observable to persons generally, the same should be excluded. In such case the doctor should be brought into court where he might be cross-examined by opposing counsel. The determination of whether the record falls within the one category or the other, we believe, should be left largely to the sound discretion of the trial court.

 With particular reference to Exhibit D-3 it will be noted that the statement in the report, "hit by car", was based upon hearsay or perhaps double hearsay. Ordinarily such hearsay statements should be excluded unless admissible as res gestae or admissions of a party to the suit. The statement, "Small laceration (superficial). Left parietal area", was admissible since such condition could be observed by any one. The statement, "no evidence of any fracture or other injuries", was a conclusion and opinion of the doctor and was properly excluded as further evidenced by the fact that it was proved at the trial that appellee did sustain a fracture. Since the entire statement was offered in evidence, the court did not err in excluding the same, although part of it was admissible. Exhibit D-5 consisting of a diagnosis in medical terms is a conclusion and opinion of the doctor. It was properly excluded. So also was Exhibit D-6 properly excluded for the same reasons, since at least part thereof was apparently a medical opinion and conclusion.

Nevertheless, if we are wrong in the foregoing conclusions and observations, no harm resulted from the exclusion of said exhibits. The jury would have been merely confused by the medical terminology in Exhibits D-5 and D-6 unless explained. Moreover, Dr. B. D. Thompson, appellee's doctor, testified fully as to the different ailments that appellee had suffered from time to time, and appellee himself testified that he had had a stroke and was not well. Both the doctor and appellee were subjected to cross-examination. Dr. Thompson testified that he did not observe any fracture

when he first examined appellee at the hospital. An x-ray later taken disclosed a long, oblique fracture of the fibula of plaintiff's right leg. Appellant's expert witness, Dr. Fred A. Bloom, on examining the x-ray, testified that it showed such fracture. Moreover, the matters contained in the diagnosis that appellant offered in evidence did not relate to the conditions resulting from the injury in question in the present case, to wit: the fracture of the fibula and a 20% to 25% permanent disability as applied to appellee's right leg.

Appellant's Sixth Point of Error is that the trial court erred in not declaring a mistrial because of misconduct of counsel for plaintiff in arguing to the jury in such a manner as to imply that appellant was protected by public-liability insurance to the extent of $5,000. Appellee's counsel made the following remarks in his opening argument to the jury:

"I ask this jury in answering Special Issue No. 8, although we have abundantly proven $15,000 in damages, considering pain and suffering, loss of earnings and loss of earning capacity, with a 20% to 25% permanent-partial disability in that leg, and impaired circulation—to answer Special Issue No. 8, $5,000, no more, no less. I have good reason for it. Do not ask me why; I cannot tell you, but please answer that issue $5,000 even. When you do that justice will have been rendered in this case."

The argument was intended evidently to inform the jury that appellant had $5,000 insurance coverage in connection with appellee's injuries. Although all the jurors may not have grasped the significance of the argument, we feel that the argument was improper and should not have been made. Appellee's suggestion that it could have been cured by counsel explaining to the jury, after their retirement to consider of their verdict, that he asked for $5,000 because he did not want an excessive verdict, is without merit. Such

an explanation would not have been accepted as valid by the jury since in the same argument appellee's counsel stated that appelleee had abundantly proven $15,000 in damages. Appellee contends that the complained of argument did not inject insurance into the case. With this contention, we cannot agree. Some of the jurors in all probability understood what counsel evidently intended to convey to them.

Although the argument was improper, the question is whether it was reasonably calculated to cause, and probably did cause, the rendition of a verdict which the jury might not otherwise have rendered. There is no rule of thumb or formula that can be used as a guide in all cases. The determination as to whether the error is prejudicial or harmless must be left to the sound discretion and good sense of the appellate courts. The court must determine the issue in each case from a study of the record as a whole. Cole v. Waite, 1952, 151 Tex. 175, 246 S.W.2d 849, 851. Associate Justice Calvert of the Supreme Court of Texas, in a well-considered article published in the Texas Law Review, Vol. 31, page 1, (November 1952), has drawn the following conclusion from a review of the opinions of our Supreme Court:

"If any definite conclusion may be drawn from a review of the opinions of the supreme court listed above it is that the court is trying to make the provisions of Rules 434 and 503 serve a useful purpose; the court seems to be developing, slowly but surely, a policy of refusing to set aside or reverse judgments for errors of law committed during the trial unless in the sound judgment of the court the errors contributed in a substantial way to bring about an unjust result. This is not to say, of course, that all errors of law will be forgiven in all cases. It is not even to say that the complaining party must, in every instance, prove more than the error itself in order to obtain a reversal. Conceivably, the na-

ture of improper evidence injected into the record or improper argument made to the jury may well be so highly prejudicial and inflammatory that the burden of going forward with proof of harm to the satisfaction of the court would be met, prima facie at least, by simply bringing forward the improper evidence or argument, without more. Into this category I think we may safely fit the case of Southwestern Greyhound Lines, Inc. v. Dickson [149 Tex. 599, 236 S.W.2d 115]."

See Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856, in which the argument was so incurably prejudicial and inflammatory as to warrant the conclusion that it must have caused the rendition of an improper judgment.

■ Bearing in mind the foregoing statements, we have concluded that the argument in the present case was not so highly prejudicial as to warrant reversal of the case, and that appellant has failed to show probable harm under Rule 434, Texas Rules of Civil Procedure. The issues on discovered peril were amply supported by the evidence, and we cannot presume that the argument had any effect upon the question of liability. Moreover, the jury ignored the argument, as evidenced by the fact that instead of returning a verdict for $5,000, as urged by appellee's counsel, they returned a verdict of $4,100, $100 of which was for medical expenses. No complaint is made about the verdict being excessive, and as a matter of fact it appears to be quite moderate for the injuries sustained.

In such particulars, the instant case is distinguishable from Sutton Motor Company v. Crysel, Tex.Civ.App. Beaumont, 289 S.W.2d 631, 639, wherein the court stated:

"Be this as it may, however, the record as a whole considered, we are of the opinion that the argument probably did influence the jury to defend-

ants' prejudice. The evidence, while sufficient to support the jury's findings, by no means compelled a finding that Mrs. Crysel's neurosis was a proximate result of the fright she experienced at the time of the collision; and, as we have already stated, the damages which were assessed because of personal injuries were definitely on the liberal side. * * *"

■ The lawyer who directly or by implication injects insurance into his case during the examination of witnesses or argument is inviting reversal. Nevertheless, we do not believe that the mention of the word "insurance", or the injection by implication of insurance into a case, should ipso facto result in reversal. If, from an examination of the entire record, it appears that such mention or injection was reasonably calculated to cause, and probably did cause, an improper verdict and judgment, then the case should be reversed, otherwise not. To hold differently would be to vitiate Rule 434, T.R.C.P., to that extent.

In the case of Roosth & Genecov Production Co. v. White, Tex.Civ.App., 281 S.W.2d 333, writ refused, n.r.e., a doctor who was testifying for plaintiff answered a question on cross-examination as to whether the plaintiff's attorney sent the doctor to another doctor's office to examine plaintiff. He responded that he went to the other doctor's office "because the insurance company wanted us to examine him jointly." The defendant in the case moved for a mistrial, which the court overruled. The court held that no contention was made that any juror mentioned or discussed insurance, and no juror was placed on the witness stand in regard thereto, and the verdict of $50,000 damages for plaintiff was not excessive, and no point was presented on appeal that it was excessive. In the present case the jurors were not interrogated as to whether there had been any discussion concerning such argument or any reference made

to the possibility of insurance, and the record does not indicate that the argument in question probably caused the jury to render a verdict which they might not otherwise have rendered. See also Moore v. Dallas Railway & Terminal Co., Tex. Civ.App., 238 S.W.2d 741, writ dismissed; Herrin Transportation Co. v. Peterson, Tex.Civ.App., 216 S.W.2d 245, writ refused.

■ Appellant's Seventh and Eighth Points of Error are to the effect that the trial court erred in refusing to submit appellant's requested Special Issues inquiring as to contributory negligence on the part of appellee. The case was submitted to the jury solely on issues of discovered peril. Appellee did not request any issues on primary negligence. Therefore, the court did not err in refusing to submit appellant's requested issues on contributory negligence, since answers thereto would have been immaterial and would not have affected in any way the issues on discovered peril. The law does not require the doing of a vain and useless thing. We have concluded that there was no error in the court's refusing to submit such issues, but if there was, no probable harm has been shown under Rule 434, T.R.C.P.

■ Appellant's Ninth and Tenth Points of Error, to the effect that the court erred in refusing to permit appellant to inquire as to the time and circumstances under which appellee engaged his counsel and to permit appellant to complete a bill of exceptions as to such matter, are without merit. The court ruled when he advised counsel for appellant that a bill of exceptions might be made at "an appropriate time", that he meant while the trial was still in progress from the standpoint of presentation of evidence. It was only after both sides had rested, and while the court was preparing his charge, that counsel for appellant undertook to present additional evidence for the purpose of making out a bill of exceptions. We are of the opinion that there was no abuse of the court's discretion under the circumstances, and if there was any error, it was harmless.

■ It is appellant's contention that the time and circumstances under which appellee engaged counsel might have had a material bearing upon the issues in the case with respect to whether the appellee was "claims minded" and thus prone to magnify or "build up" a minor accident into a major claim. The injuries in this case were established largely by physicians. Appellee was in no position to magnify the fracture of the bone in his leg. Moreover, it is not proper to show in evidence that a personal injury litigant is "claims minded" in an effort to attack his credibility. See McCormick and Ray, Vol. 2 (2d Ed.), page 375, where it is stated:

> "But where the defendant merely seeks to show that the plaintiff is a chronic personal injury litigant the evidence will be excluded on the theory that its slight probative value is outweighed by the danger of unfairly prejudicing the claim of an innocent litigant."

See Houston & T. C. R. Co. v. Johnson, 103 Tex. 320, 127 S.W. 539; L. B. Price Mercantile Co. v. Moore, Tex.Civ.App., 263 S.W. 657, writ dism.; San Antonio Traction Co. v. Cox, Tex.Civ.App., 184 S.W. 722, no writ history.

The judgment of the trial court is affirmed.