**Nevin CARLYLE and Denise Kramer, Appellants,**

v.

**Hsein E. LAI, M.D., and Spectrum Emergency Care, Inc., Respondents.**

**No. WD 41436.**

Missouri Court of Appeals, Western District.

Nov. 21, 1989.

Rehearing Denied Jan. 30, 1990.

James Bartimus, Lantz Welch, Kansas City, for appellants.

Turner and Boisseau, Hal D. Meltzer, Christopher F. Pickering, Kansas City, for respondents.

Before NUGENT, C.J., and FENNER, and ULRICH, JJ.

ULRICH, Judge.

Nevin Carlyle and Denise Kramer were the parents of David Carlyle, a 7–year–old boy who died August 7, 1984, at the Johnson County Memorial Hospital in Warrensburg (hospital), as a result of complications from appendicitis. While in the hospital, David was attended by Hsein E. Lai, M.D., an emergency room physician placed at the hospital through Spectrum Emergency Care, Inc. (Spectrum), a Missouri corporation. Spectrum provided emergency room medical personnel to the hospital pursuant to contract. Dr. Lai worked for Spectrum. Mr. Carlyle and Ms. Kramer (parents) appeal from a verdict in favor of Dr. Lai and Spectrum in an action for the wrongful death of their son. The judgment is reversed.

On August 7, 1984, at approximately 2:30 a.m., Mr. Carlyle and Ms. Kramer took their 7–year–old son David to the hospital's emergency room. David experienced constant abdominal pain and vomited during the previous four days. Dr. Lai examined David at the emergency room. He ordered the administration of intravenous fluids and x-rays and contacted David's family physician, Dr. A.L. Folkner. Dr. Lai and Dr. Folkner discussed and agreed upon fluid management and further laboratory

tests. Dr. Folkner, according to hospital policy, was the admitting and attending physician. He authorized Dr. Lai to call a surgeon into the case.

Dr. Hanna was the surgeon on call, and Dr. Lai first attempted to call him at 3:30 a.m. Dr. Hanna, who could not then be contacted by telephone, was finally contacted by the police around 5:30 a.m. He arrived at the hospital twenty minutes later. In the interim, Dr. Lai and nurse Mike Nishikawa attended David. His vital signs were monitored every fifteen minutes, although not recorded each time, and he was transferred to the intensive care unit at 5:15 a.m. Dr. Hanna did not operate on David upon his arrival at the hospital, but instead performed elective surgery on another patient.

At 9:00 a.m. David's condition worsened. Dr. Hanna and Dr. Folkner were notified. David experienced respiratory distress at 10:50 a.m. and died.

Mr. Carlyle and Ms. Kramer sued both Dr. Lai and Spectrum for allegedly causing David's death. Because Dr. Lai worked for Spectrum, the parents sued Spectrum on an agency theory. The jury rendered a verdict in the five-day trial for both Dr. Lai and Spectrum. David's parents, seeking reversal and a new trial, allege the the trial court erred: 1) by allowing Dr. Lai to state his opinion that admissions read by plaintiff's attorney from his deposition were unfair and out of context; and 2) by permitting defense counsel to ask Ms. Kramer on cross-examination when she first retained an attorney to prosecute this action.

The first issue involves the permissible reading of a party deposition into evidence pursuant to Rule 57.07(a)(2). Plaintiffs, in their case-in-chief, read certain admissions made by defendant Dr. Lai in his deposition. After portions of Dr. Lai's deposition were read to the jury, Dr. Lai's attorney asked him the following question:

Mr. Turner:

Q. All right. Now, sir, yesterday I think that they pulled excerpts from maybe 20 or 30 pages in the cross-examination of you. I want you to tell the Court and jury, do you feel that taking those excerpts

. . . .

Plaintiff's counsel objected to this question as argument and improper and a bench conference was held. Defense counsel admitted to the judge that his intention was to elicit the witness's opinion whether the selected readings from Dr. Lai's deposition were out of context. The court called such testimony self-serving but allowed it, and Dr. Lai testified, "In my opinion just reading was out of context and totally unfair." Appellants assert that Dr. Lai's testimony was factually wrong, prejudicial criticism, and impermissible subject matter for expert testimony.

■■■ Rule 57.07(a)(2) grants litigants the right to use a party's deposition "for any purpose." It is permissible to read parts of an opponent's deposition to the jury. See, Meyer v. Dubinsky Realty Co., 133 S.W.2d 1106, 1110 (Mo.App.1939). After plaintiff's counsel read part of Dr. Lai's deposition, defense counsel attempted to rehabilitate his client by asking his opinion of plaintiff's counsel's selective reading. Respondents assert that Dr. Lai's opinion that the readings selected from his deposition were out of context and unfair avoided their having to read all two hundred pages of Dr. Lai's deposition. It is the general rule that when one party reads a portion of a deposition the opposing party may read some or all of the remainder in explanation. Burrous v. American Airlines, Inc., 639 S.W.2d 263, 267 (Mo.App.1982). Eliciting Dr. Lai's opinion that reading portions of his deposition unfairly presented his deposed testimony out of context was improper. However, because Dr. Lai's comments were so obviously self-serving and because plaintiff's counsel had the opportunity to conduct redirect examination of the witness utilizing Dr. Lai's deposition, prejudice meriting reversal did not occur.

The second point claims prejudicial error resulted when the court permitted Ms. Kramer to be asked on cross-examination when she first contacted her attorney to sue the defendants following her son's

**928**

death. The applicable cross-examination follows:

Q. Ma'am, your son died on August 7th of 1984, did he not?

A. Yes, he did.

Q. And just 15 days after he died, you hired Mr. Rahm to sue in this matter, did you not?

MR. RAHM: Your Honor, I object to that, and I think that's entirely improper and obviously—

MR. TURNER: That's a speaking objection.

MR. RAHM: I move that the question be stricken.

THE COURT: Overruled, proceed.

Q. (By Mr. Turner) Ma'am, that's a fact, isn't it? Just 15 days after your son died, you hired Mr. Rahm to prosecute an action in this case, didn't you?

MR. RAHM: Your Honor, I object. That's irrelevant and immaterial.

THE COURT: Overruled.

Q. (By Mr. Turner) Didn't you, ma'am?

A. Yes, I did.

David's parents contend that the defendant's questions were improper, irrelevant, and prejudicial. They argue that the questions were intended to make them appear litigious and avaricious. There is no established law in Missouri specifically addressing the propriety of inquiring on cross-examination when a party hired counsel.[1]

■ To warrant a new trial Mr. Turner's question to Ms. Kramer must be irrelevant and prejudicial. *Roque v. Kaw Transport Co.*, 697 S.W.2d 254 (Mo.App.1985); *Dent v. Monarch Life Ins. Co.*, 231 Mo.App. 283, 98 S.W.2d 123, 125 (1936). Simply asking an irrelevant question does not merit reversal.

■ The test for relevancy applied in Missouri is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence. *Lawson v. Schumacher & Blum Chevrolet, Inc.*, 687 S.W.2d 947, 951 (Mo.App. 1985). The amount of proof required to meet the relevancy threshold is attained when the truth of the offered fact makes probable the existence of the fact in issue. *Id.* Because of the obvious subjective nature of such a determination, the trial court is granted broad discretion which will be disturbed by this court only for an abuse of that discretion. *Id.*

■ The trial court, in overruling counsel's objection on grounds of relevancy, implicitly held the question relevant. This court disagrees. When the parents first contacted their legal counsel after their son's death is not an issue in this trial, nor can the response to the question reasonably be expected to tend to prove or disprove a fact in issue. An answer to the question cannot reasonably be expected to corroborate other relevant evidence. Respondents argue that when plaintiffs obtained counsel was relevant because appellants' attorney commented twice in his opening statement that the case had been pending for four years before trial.[2] These innocuous statements did not "open the door" to permit inquiry about when Ms. Carlyle contacted her attorney. The information sought by defense counsel's question was irrelevant.

---

1. *But See, Chailland v. Smiley*, 363 S.W.2d 619, 629 (Mo. banc 1963). (Defense counsel asked plaintiff on cross-examination if he contacted his attorney on the date of the incident; plaintiff's counsel objected on grounds of relevancy. The trial court sustained the objection and made a comment that the issue was whether injury had occurred and whether it was due to defendant's negligence. On appeal the propriety of the court's voluntary statement rather than its ruling on the objection was the alleged error. The court's comment failed to include comment about plaintiff's alleged contributory negligence as an issue along with the issue of plaintiff's negligence.)

2. Following are excerpts from plaintiff's counsel's opening statement:
   "Now David, I never got to know David, never got to meet him, but I've learned a lot about him in the 4 years it's taken to get here, from his parents, his friends, and his mother.
   . . . .
   The facts; we've had a head start. We, the lawyers, for these 4 years, we've read the records, seen the Emergency Room sheet, depositions that were taken in this case, and investigations, all before coming here."

Appellants offer Missouri cases and one directly in point from Texas to support their premise that defendant's inquiry was prejudicial. The Missouri Supreme Court in the case of *Hungate v. Hudson*, 353 Mo. 944, 185 S.W.2d 646 (1945), reversed the judgment because defendant's cross-examination of the plaintiff about his choice of venue was deemed prejudicial. The plaintiff brought suit for personal injury caused when the vehicle he was driving was struck from behind by a truck owned by the defendant and driven by defendant's employee. Suit was filed in St. Louis. The plaintiff, apparently, could have filed suit in Illinois had he so chosen. The court stated that "if such inquiries are wholly immaterial and can have no effect other than their general tendency to prejudice the jury against the witness or party they are not the subjects of legitimate interrogation and are not permissible." *Id.* at 649. The court also stated, "It could hardly logically be stated that taking advantage of any right which the law gives would be discreditable." *Id.* at 650 (quoting *Shull v. Kallauner*, 222 Mo.App. 64, 300 S.W. 554, 555 (1927)).

In the case of *Dent v. Monarch*, 98 S.W.2d at 124, over plaintiff's objections, the defendant cross-examined the plaintiff about numerous unrelated personal injury claims that she had filed with the defendant insurance company. No effort was made by the defendant to show that plaintiff's claim being litigated was fraudulent except by the criticized cross-examination. The court held the questioning of the plaintiff about unrelated claims in an attempt to show her litigated claim fraudulent was irrelevant, prejudicial and an abuse of the trial court's discretion. *Dent*, 98 S.W.2d at 124, 125.

*Martinez v. Williams*, 312 S.W.2d 742 (Tex.App.1958), is a Texas personal injury case in point. The verdict was for the plaintiff. Defendant appealed the trial court's ruling that he could not inquire about the time and circumstances under which plaintiff engaged his counsel. He asked the question to attack the plaintiff's credibility by showing him to be "claims minded." The court quoted McCormick and Ray Vol. 2 (2nd Ed.), p. 375: "where the defendant merely seeks to show that the plaintiff is a chronic personal injury litigant the evidence will be excluded on the theory that its slight probative value is outweighed by the danger of unfairly prejudicing the claim of an innocent litigant." The judgment was affirmed with a holding that the slight probative value of the jury knowing when and under what circumstances the plaintiff hired his lawyer was outweighed by danger of unfair prejudice. *Id.* at 752.[3]

■ These cases address attempts to discredit plaintiffs for exercising rights fundamental to or granted by the legal system. Accessing the legal system is normally not to be discouraged and, exercising one's right to utilize the legal system within established rules and procedures should normally not to be used to attempt to discredit a litigant with a jury. The Missouri legislature and Supreme Court have established the statutes and rules which govern a person's access to the courts. The right to seek the advice of counsel is so fundamental that, absent a justifiable reason and supporting evidence, counsel risk reversal when attempting to discredit a litigant by cross-examining him about the time and circumstances of his having consulted an attorney to discuss and exercise his legal rights.

■ The questions asked at the commencement of Ms. Kramer's cross-examination and argued during summation by Mr. Turner regarding when Ms. Kramer hired plaintiffs' attorney injected into the trial an improper issue. The questions were asked to discredit the plaintiffs as avaricious be-

---

**3.** This balancing test parallels Federal Rule of Evidence 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Such a balancing test is essentially the same as the two-tier inquiry into relevancy and prejudice applied in Missouri.

cause they sought the services of a lawyer soon after their son's death. Both *Martinez* and *Hungate* held that the exercise of a party's rights is not a proper issue for examination and is grounds for reversal. The question posed to Ms. Kramer and the subsequent argument injected an improper issue into the trial that materially affected the outcome of the action and constituted prejudice. *See Coffman v. Faulkner*, 591 S.W.2d 23, 26 (Mo.App.1979).

The judgment is reversed and the case is remanded for a new trial.

NUGENT, C.J., concurs.

FENNER, J., dissents in separate dissenting opinion.

FENNER, Judge, dissenting.

Dr. Lai was the emergency room physician. David Carlyle was transferred from the emergency room to the intensive care unit at approximately 5:15 a.m. on August 7, 1984. This was approximately two hours and forty-five minutes after his admission in the emergency room. David was transferred from Dr. Lai's care on orders from Dr. Folkner who was his family doctor as well as the admitting and attending physician. Dr. Folkner also authorized Dr. Lai to call a surgeon in on the case.

When David was taken to the intensive care unit his vital signs were stable, his skin was indicative of hydration and his orientation was improved from the time of his admission to the emergency room. On admission to the intensive care unit David was alert, coherent and cooperative.

Dr. Hanna was the surgeon on call at the time of David's admission. Dr. Lai attempted to contact Dr. Hanna at 3:30 a.m. Dr. Hanna could not then be contacted, but he was finally contacted by the police at 5:30 a.m. Dr. Hanna arrived at the hospital twenty minutes later. Dr. Hanna did not operate on David upon his arrival at the hospital, but performed elective surgery on another patient.

At 9:00 a.m. David's condition changed; he became restless and confused. At 10:50 a.m., approximately five and one-half hours after he left the emergency room, David went into respiratory distress and died. The experts who testified on behalf of Dr. Lai stated that David could have been saved if Dr. Hanna had acted properly in performing surgery on David upon Dr. Hanna's arrival at the hospital.

The majority bases its reversal upon the testimony, at trial, of David's mother, Mrs. Kramer, in regard to when she first retained an attorney and the subsequent argument to the jury on this issue. The applicable testimony was as follows:

Q. Ma'am, your son died on August 7th of 1984, did he not?

A. Yes, he did.

Q. And just 15 days after he died, you hired Mr. Rahm to sue in this matter, did you not?

MR. RAHM: Your Honor, I object to that, and I think that's entirely improper and obviously—

MR. TURNER: That's a speaking objection.

MR. RAHM: I move that the question be stricken.

THE COURT: Overruled, proceed.

Q. (By Mr. Turner) Ma'am, that's a fact, isn't it? Just 15 days after your son died, you hired Mr. Rahm to prosecute an action in this case, didn't you?

MR. RAHM: Your Honor, I object. That's irrelevant and immaterial.

THE COURT: Overruled.

Q. (By Mr. Turner) Didn't you ma'am?

A. Yes, I did.

The majority correctly states that to warrant a new trial, the question to Ms. Kramer must be irrelevant and prejudicial. *Roque v. Kaw Transport Company*, 697 S.W.2d 254 (Mo.App.1985); *Dent v. Monarch Life Ins. Co.*, 231 Mo.App. 283, 98 S.W.2d 123, 125 (1936). Simply asking an irrelevant question does not merit reversal.

The test for relevancy applied in Missouri is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence. *Lawson v. Schumacher & Blum Chevrolet, Inc.*, 687 S.W.2d 947, 951 (Mo.App.1985). The amount of proof required to meet the rele-

vancy threshold is attained when the truth of the offered fact makes probable the existence of the fact in issue. *Id.* Because of the obvious subjective nature of such a determination, the trial court is granted broad discretion which will be disturbed by this court only for an abuse of that discretion. *Id.* Non-prejudicial error will not justify reversal of a judgment by an appellate court. *Roque v. Kaw Transport Company,* 697 S.W.2d 257.

There were many instances throughout the trial that the appellants challenged Dr. Lai's memory of the events of August 7, 1984. There were many questions asked of Dr. Lai to which he stated he could not respond because he did not remember the details to the extent that counsel inquired. As might be expected in a case of this nature, there were efforts made by opposing counsel to discredit Dr. Lai, to show that he had something to hide and that he was not truthful with the jury.

The facts in this case were clearly at issue and the credibility of the witnesses was a matter to be decided by the jury. There were matters before the jury that could make relevant the point in time that the respective parties began to prepare their side of the case and the resulting effect on their ability to recall the facts. Furthermore, in opening statement appellant's counsel advised the jury that he had been involved with the case for four years. By virtue of this statement, the jury was already aware that the appellants had obtained counsel shortly after their son's death. Trial was in September of 1988 and David Carlyle died in August of 1984.

I do not approve of the plaintiffs being asked in this cause when they hired their attorney, but under the facts of this case I do not believe that it was an abuse of discretion, which resulted in prejudice, for the trial judge to overrule counsel's objection to the question at issue. There cannot be a finding of prejudice when the information of which appellants complain was already placed before the jury by the appellants themselves.

The majority opinion also places significance on the fact that, in closing argument, respondent's counsel referenced when appellants hired counsel. However, it should be noted that there was no objection to this argument. Where no objection is made at the time of an opponent's argument of which complaint is made on appeal, the objection is waived. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 616 (Mo. banc 1969).

This was a lengthy and involved trial that lasted five days and is recorded by 1438 pages of transcript. Testimony was presented to the jury from twenty-three different witnesses, fifteen of whom were physicians. The trial judge was in a far superior position than this court to determine the prejudicial effect, if any, of the question which covers twenty-one lines, inclusive of objections, on one page of the record, in reference to a subject that was initially brought up by the appellants.

To find prejudice against the respondents on this matter is tantamount to finding prejudice against the appellants because appellants' counsel argued that when opposing counsel came to court on the first day of trial "with all the lawyers from his other offices, and with all those briefcases, I knew right then that they knew they were in big trouble, that this was going to be a big case, to have him coming over here from Great Bend, Kansas ... he'll be back in Kansas doing the same thing next week."

The point is that lawyers sometimes become overzealous and do not always conduct themselves in the most appropriate fashion possible, but it is for the trial judge to determine the effect of such conduct on the jury.

There was substantial evidence in the record to support the jury's verdict and the record does not support a finding by this court of prejudicial error. I would affirm the judgment of the trial court.