Gladys I. ALLEN, Plaintiff-Respondent,

v.

David P. ANDREWS, Defendant-Appellant, and James P. Andrews, Defendant.

No. 10775.

Missouri Court of Appeals, Southern District, Division Two.

May 13, 1980.

David W. Bernhardt, Robert W. Ewing, Bussell, Hough, Bernhardt, Leighton & O'Neal, Springfield, for defendant-appellant.

Charles C. Shafer, Jr., Kansas City., for plaintiff-respondent.

HOGAN, Judge.

This action for damages arose out of a three-car collision. The jury returned an ambiguous verdict. The trial court granted a new trial upon the ground that the verdict was not responsive, and upon the further ground that the volunteered statement of a witness had been prejudicial to the plaintiff. The defendant appeals.

The casualty occurred during the evening rush hour on Glenstone, a thoroughfare which runs north and south in the east part of Springfield, Missouri. Plaintiff was the driver of the lead car. She was driving south in the east (inside) southbound lane.

There was a second vehicle immediately behind the plaintiff and defendant David Andrews[1] was driving the third car. Plaintiff came to a stop because a vehicle ahead of her was "signaling to make a left turn" into an intersecting street. The stop was a "complete stop." The second vehicle, according to the plaintiff, also came to a full stop without striking plaintiff's car. Defendant thereupon struck the second vehicle from the rear, causing the second vehicle to strike plaintiff's automobile. Plaintiff averred that she sustained personal injuries.

The plaintiff undertook to prove her case by calling defendant as a witness. Defendant testified the accident occurred between 5:30 and 6 p. m., "during the rush hour [while traffic was] bumper-to-bumper." It was "beginning to get dark" but defendant had no difficulty seeing the second vehicle, which was immediately in front of him. Defendant "became aware" of the second vehicle when its driver slackened his speed north of the place where the accident happened. Defendant did not keep the second vehicle constantly in sight; his wife, who was three months pregnant, "groaned" and defendant turned aside to see if she was ill. Defendant "believe[d] [he was then] 15 or 20 feet" to the rear of the second vehicle, going "[a]bout 15 or 20 miles an hour, I'd say." When defendant "glanced back" he saw the second vehicle coming to a sudden stop, tried to set his brakes, was unsuccessful and struck the second vehicle. There was apparently, no extensive damage to the plaintiff's vehicle nor the second automobile. Defendant's vehicle had to be towed from the place of collision because the radiator had been damaged.

Three questions are presented in this court. They are:

1. Did the plaintiff make a submissible case upon failure to keep and maintain a careful lookout?

2. Did the trial court err in failing to construe the ambiguous verdict as a verdict for the defendant?

3. Did the trial court err in granting a new trial because of the volunteered statement of a medical witness?

We have concluded that the first question is so inadequately briefed that we cannot review it without becoming an advocate for the defendant; the second question need not be resolved, and the third question should be answered negatively.

The submissibility question has been relegated to the end of the brief; the defendant has relied on a single citation of authority, and has omitted all references to the parts of the transcript which demonstrate the missing element or elements of plaintiff's case. It is not our purpose and we do not mean to hector the able and industrious attorneys who represent the defendant, and we agree that our appellate courts are awash in rules, but in candor, the defendant has simply invited us to become his advocate, search the transcript, consider the reasonable inferences and determine whether or not the plaintiff established a breach of legal duty.

■ We call attention to the importance of developing the submissibility argument carefully, if it is to be presented. When the point is fairly raised and developed on appeal by an aggrieved defendant, the submissibility of the plaintiff's case must be considered and ruled before the other assignments of error are examined. If a plaintiff has no case to submit, trial error is immaterial. *Osborn v. McBride*, 400 S.W.2d 185, 188[1] (Mo.1966); *Walker v. Niemeyer*, 386 S.W.2d 87, 92[3] (Mo.1965); *Howard v. Johnoff Restaurant Company*, 312 S.W.2d 55, 56[1] (Mo.1958); *O'Dell v. Dean*, 356 Mo. 861, 863, 204 S.W.2d 248, 249[1] (1947).

This is not to say we have ignored defendant's point. Plaintiff's verdict-director, Instruction No. 2, alternatively submitted failure to keep a careful lookout, MAI 17.05, and failure to act after danger of collision became apparent. MAI 17.04. Numerous breaches of duty were submitted, but de-

1. The action was originally filed against both defendants upon the theory that defendant David Andrews was acting as defendant James Andrews' agent. Upon motion, the cause was dismissed as to defendant James Andrews at the close of the plaintiff's case.

fendant calls attention only to the lookout submission. Defendant's contention is not that some of the breaches of duty submitted were not supported by the evidence; it is that plaintiff made no submissible case upon failure to keep a careful lookout.

■ The basic submission of a "lookout" instruction is the failure to see and take some action. *Lovelace v. Reed*, 486 S.W.2d 417, 418–419[1–3] (Mo.1972). We agree that the lookout submission presupposes the time and means to take effective precautionary action, *Heberer v. Duncan*, 449 S.W.2d 561, 563[3] (Mo. banc 1970), but defendant's duty was more comprehensive than he seems to believe it was. The "lookout" duty requires motorists to exercise the highest degree of care to discover the presence of other persons and objects upon the streets and highways and to become aware of dangerous situations and conditions. *Miller v. St. Louis Public Service Company*, 389 S.W.2d 769, 771[2] (Mo. 1965); *Rakestraw v. Norris*, 478 S.W.2d 409, 419[19] (Mo.App.1972). The defendant's own testimony was that he was driving in "bumper-to-bumper" traffic during the rush hour, and that he acquired knowledge of the second vehicle "50 to 100 feet before [the collision]." At that point the second automobile had slowed very suddenly to "five to ten miles an hour" and had then proceeded. While our holding is wholly ex gratia, we think a jury could have inferred that defendant had, or should have had, knowledge of erratic traffic movement and potential danger ahead for an appreciable time before he glanced aside and could have acted in some manner to avoid the collision.

■ The principal issue upon trial was whether plaintiff had sustained *any* injuries as a result of the casualty in issue, and evidence was admitted tending to show she had received a "settlement" from a casualty carrier designed to compensate her for another, different accident in which she was involved. We are inclined to believe the evidence was competent on the issue of the causal connection between plaintiff's disability and the collision in which defendant was involved, *Jackson v. Thompson*, 358 Mo.

1001, 1003–1004, 218 S.W.2d 97, 98–99[1] (1949), and plaintiff offered no limiting instruction. However, money was not paid by a codefendant, was not received as compensation for whatever injuries, if any, plaintiff received on November 7, 1973, and plaintiff's verdict-director included no deduction clause. See MAI 7.01. In this state of evidentiary and instructional confusion, the jury returned the following verdict:

"We, the jury, find the issues in favor of the plaintiff, and assess plaintiff's damages at $–0–."

The trial court, relying on this court's ruling in *Boone v. Richardson*, 388 S.W.2d 68, 76 (Mo.App.1965), granted a new trial on the ground that the jury's verdict was not responsive.

The defendant argues that we should reconsider our ruling in *Boone*, supra, and that *Haley v. Byers Transportation Company*, 394 S.W.2d 412, 416–417[7, 8][9] (Mo. 1965), requires the ambiguous verdict to be regarded as a verdict for the defendant. We decline to reconsider our ruling in *Boone v. Richardson*, supra; we thought, by noting authority to the contrary and by commencing the dispositive paragraph of the opinion *"[i]n this particular case"* we had avoided the implication that we were stating an absolute rule of law. Such, at least, was our intention. We are not only bound by, but agree with the implied ruling in *Haley*, supra. If an apparent ambiguity in a verdict can be confidently resolved by resorting to other parts of the record, there is no reason to require another trial. The ambiguity here, however, cannot be as readily resolved as that found in *Haley*, supra. In *Haley*, the plaintiff had already received $80,000 as compensation from a codefendant, and the jury was instructed to deduct that sum in determining the amount of plaintiff's damages. In the case at hand, the jury was specifically told to find for the defendant unless it believed defendant was negligent and that plaintiff sustained damage as a direct result thereof. MAI 33.-03(5). There was evidence of compensation for injury sustained in another action. The evidence was admissible for a limited pur-

266

pose, but the jury was not given any limiting instruction. We need not pursue the matter further for the trial court apparently had the view that the jury's confusion was caused in substantial part by a volunteered statement on the part of a medical witness, and in the circumstances we are in no position to disagree.

 During the trial of the case, an orthopedic surgeon who had treated the plaintiff, mistaking a court of law for a public forum, stated:

"I would just like to make a broad statement insofar as my dealings with patients with injuries which involve litigation—."

Thereupon, counsel for plaintiff objected and the trial court admonished the witness to answer only the question propounded, which was whether the witness had an opinion concerning the cause of plaintiff's injuries, if any. Wholly disregarding the court's admonition, the witness stated:

"I repeat that without exception patients with litigation in injured necks apparently recover because they never come back to see me once the litigation has been settled, so I would say [the plaintiff's] neck would recover without any residual disability."

Before delivering this discourse, the witness had several times remarked that he "wanted to get [his views] in there."

Plaintiff's counsel promptly moved a mistrial or for an admonition to the jury to disregard the witness' remarks. The trial court denied the mistrial; no admonition was forthcoming. Counsel for plaintiff assigned error to the refusal to declare a mistrial in his motion for new trial. In very general terms, the trial court granted a new trial because it concluded a mistrial should have been granted.

 The defendant argues that plaintiff should not have been heard to complain because she acquiesced in the trial court's refusal to declare a mistrial. We do not so read the record. Rule 78.01, V.A.M.R., vests a trial court with broad discretion to grant a new trial because of the misconduct

of a witness in making a voluntary statement. *Morris v. Baggett Transportation Co.*, 306 S.W.2d 445, 451[5] (Mo.1957); *Distler v. Columbian Nat. Life Ins. Co.*, 206 Mo.App. 263, 270, 227 S.W. 133, 135[2] (1921); 66 C.J.S. New Trial § 209, p. 526 (1950). If the trial court's grounds and reasoning are not entirely clear on the record, they are made plain by its explanatory memorandum dated August 12, 1977. Inasmuch as the memorandum clarifies and does not impeach its order granting a new trial, the memorandum may be considered. *Ogle v. Todd*, 514 S.W.2d 38, 40 (Mo.App. 1974). The memorandum makes it clear that the trial court considered the medical witness' volunteered statements prejudicial in the circumstances. The trial court heard and saw the witness; it was much better able than we to judge the prejudicial effect of the physician's volunteered opinions concerning personal injury litigation. We find no abuse of discretion and the order granting a new trial is affirmed.

BILLINGS, P. J., MAUS, J., and KELSO, Special Judge, concur.