**Stephen M. YINGLING and Linda S. Yingling, and Christina D. Yingling, b/n/f Linda S. Yingling, Appellants,**

v.

**Timothy A. HARTWIG, Respondent.**

**No. WD 51563.**

Missouri Court of Appeals,
Western District.

July 23, 1996.

Lance A. Riddle, Bruce A. Bailey, Bailey & Associates, Warrensburg, for appellants.

John G. Schultz, Ryan E. Karaim, Franke & Schultz, Kansas City, for respondent.

Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.

ELLIS, Judge.

Stephen M. and Linda S. Yingling and their daughter, Christina Dawn Yingling, appeal from a judgment of the Lafayette County Circuit Court. Christina Yingling, by her next friend Linda S. Yingling, filed an action seeking damages for personal injuries she sustained in a vehicular accident, allegedly due to the recklessness and negligence of Timothy A. Hartwig. The case was tried to a jury which returned a verdict in favor of the Yinglings and against Hartwig, with total damages assessed at $2,500.00 for Christina and $250.00 for her parents (on their claim for medical bills) and allocating 100% fault to Hartwig.

On August 10, 1993, at approximately 8:20 p.m., Christina Yingling was driving an automobile owned by a friend, Derek Sommerville, northbound on Highway 13 in Lafayette County. As she approached the intersection of Highway 13 and Business 13 in Higginsville, she observed a pick-up truck, travelling southbound, gradually slowing down. Then, she saw Hartwig, who was following the truck, swerve over the center-line of the road into the northbound lane. An instant later, Hartwig's vehicle collided head-on with the vehicle Yingling was driving, causing it to leave the road and roll down a hill into a parking lot. During the collision, Yingling's head impacted the windshield, breaking it, her knees hit the dashboard, and she hit against the seatbelt and then "went back into [her] seat." Immediately following the impact, Yingling saw "black," and "when the lights came back on," the car was stopped (in the parking lot below the road). She felt a big knot on her head with a small cut on it, and her knees were sore. She eventually climbed out the passenger door of the vehicle

and sat on the tailgate of a pick-up truck to await emergency personnel.

Yingling was examined by a doctor at the scene of the accident, but she was not sent by ambulance to the emergency room. Once released from the scene, Yingling went home, and her parents took her to the emergency room at a hospital in Warrensburg, Missouri. At the emergency room, she complained of discomfort in her back. The emergency room physician examined her, administered Tylenol for her pain, and prescribed ice for her forehead. Yingling's parents then took her home. At home, Yingling experienced dizziness, blurry vision, numbness in her left arm, and general soreness about her body. She slept very little that night.

Yingling sought treatment from Dr. Smith of Higginsville, Missouri, on two occasions in August and September 1993. Thereafter, beginning in December 1993, Yingling sought treatment from Dr. Abrams. Yingling testified at trial that approximately six months after the accident her neck was better, the knot on her head was gone, her knees got better, and the numbness in her arm was better; however, she still had leg and back pains and headaches. By the time of trial, Yingling testified she still had regular severe headaches and daily back pain. She testified further that her injuries affect her sleeping, daily routine activities (grooming and household chores), school activities, and her relations with friends.

On June 2, 1994, Yingling, by her mother as next friend, and her parents filed a petition for damages as a result of the personal injuries Yingling sustained in the accident. An amended petition was filed on April 4, 1995, wherein the Yinglings alleged Timothy A. Hartwig was negligent in various respects which caused Christina Yingling's injuries. The case was tried to a jury in April 1995. The jury assessed damages in the amount of $2,500.00 to Christina for her personal injuries and $250.00 to her parents for their expenses for Christina's medical care and treatment, finding Hartwig 100% at fault. The trial court entered its judgment in favor of the Yinglings according to the verdict. The Yinglings moved for a new trial, but their motion was denied. They now appeal.

The Yinglings raise ten points on appeal. However, it is unnecessary to describe and address all the points because our disposition of Point II requires reversal and remand for a new trial. In Point II, the Yinglings allege the trial court erred in admitting Dr. Ernest Neighbor's testimony that there is a difference in the length of time subjective complaints of injury continue with a patient involved in litigation as compared to a patient not involved in litigation. Also, the trial court abused its discretion in denying their motion for new trial because admission of Dr. Neighbor's testimony was prejudicial and warranted a new trial.

This issue was squarely addressed by the southern district of this court in *Allen v. Andrews,* 599 S.W.2d 262 (Mo.App. S.D. 1980). In *Allen,* reconsidering its earlier denial of a motion for mistrial, the trial court granted a new trial because a medical expert (orthopedic surgeon) stated the following at trial before the jury: "I repeat that without exception patients with litigation in injured necks apparently recover because they never come back to see me once the litigation has been settled, so I would say [the plaintiff's] neck would recover without any residual disability." *Id.* at 266. The trial court determined the expert witness' testimony was prejudicial and ordered a new trial. *Id.* Similar to *Allen,* in the case at bar, the trial court allowed defense counsel to read the following testimony from Dr. Neighbor's deposition:

Q: (By defense counsel, Mr. Karaim) In your twenty years—or pardon me— whatever, twenty—sixteen years you have been in orthopedic surgery, you've examined persons who are not involved in litigation; correct?

A: (By Dr. Neighbor) Yes.

Q: And you've examined persons like Ms. Yingling who are involved in litigation; correct?

A: Yes.

Q: In your opinion, Doctor, and based on your experience, is there any difference in the nature of the subjective complaints made between people not in litigation and people who are in litigation?

[Objection made and overruled][1]

A: Yes.

Q: What is the difference, Doctor?

A: Patients who are involved in litigation tend to have their subjective complaints last considerably longer. If they're employed, they tend to work a lot longer to get back to the work situation. They just go on a longer period of time.

Q: And those are observations you've made in your twenty some years of experience, correct?

[Objection made as to the form of the question; trial court overruled the objection]

A: Yes.

\* \* \*

Q: Doctor, based upon your five-minute examination, why do you feel that Ms. Yingling can expect to have any improvement in her condition?

A: Well, I think that she has a completely normal range of motion. She's very limber. She has no evidence of any neurological problems. She's seventeen years of age. She was fifteen when this accident happened, which really rules against any permanency in any injury she had. And my experience is that as people get through their litigation and move on, they improve with their subjective complaints.

Moreover, the substance of Dr. Neighbor's testimony was presented in defense counsel's opening statement and closing argument. In his opening statement, defense counsel stated:

And about this idea that she has got permanent problems, he says, Look, she is young, she is going to do better. And he goes one step further. He goes on to testify that when people finish their lawsuits, they tend to get a lot better. He's been doing this for 20 years, being an orthopedic surgeon, and he's seen people come through who are in lawsuits and those who are not. And he will testify under oath that when people get done with these lawsuits, and when you can't find anything wrong with them, they tend to get better. He says she is truthful. He doesn't call her a liar. But he says that sometimes when you focus on the lawsuit and you are asked a lot about it, you tend to prolong your complaints. It's hard-hitting testimony from a reputable doctor.

During closing argument, defense counsel stated:

Sure, she was stiff and sore all over, had a sore neck and back. That happens in every accident. And, as you heard Dr. Neighbor say, most people who aren't in lawsuits get better in a couple of weeks when they are not looking for a lot of money, not going to come in and say, I want $35,000.

 The issue presented is whether the trial court erred in admitting the above-quoted testimony and subsequently abused its discretion by not granting the Yinglings' Motion for New Trial. Hartwig is correct that a trial court is generally granted broad discretion in the admission of expert testimony. *Disbrow v. Boehmer*, 711 S.W.2d 917, 924 (Mo.App. E.D.1986). However, as in *Allen*, the trial court in the case at bar abused its discretion in allowing Dr. Neighbor's testi-

1. Hartwig makes no argument that the Yinglings point is not preserved for review. The objection made by plaintiffs' at trial was the same as that made by them in a previously denied motion in limine, which asserts:

This information is irrelevant in that it has no probative value in this case and any probative value that it may have far outweighs [sic] its prejudicial effect upon the average juror. This information is immaterial to the issues in this case because the information does not pertain to Christina D. Yingling only to other people in general. There is insufficient foundation for Dr. Neighbor's response in that there is no

showing that Christina D. Yingling's injuries are comparable or similar to the "other" people Dr. Neighbor is referring to. Dr. Neighbor does not indicate who these "other" people are, how he knows them, or even if they are patients of his.

At the time the deposition was taken, plaintiff's counsel interposed the following objection:

Objection to the question as improper. This witness cannot give an opinion as to whether or not the complaints by someone else who are not even here being examined are different whether they are in litigation or not. Also because it's overly broad, vague, ambiguous.

mony because it was highly prejudicial to the Yinglings' case. Dr. Neighbor's testimony constituted broad-sweeping statements reflecting on "people not in litigation" and "people who are in litigation"—generalities, without any indication of similarity with or application to Christina Yingling. A court of law is not a public forum, and witnesses are not permitted to make general declarations about matters wholly unrelated to the parties. *Allen,* 599 S.W.2d at 266. *Cf. Disbrow v. Boehmer,* 711 S.W.2d 917 (Mo.App. E.D. 1986) (no abuse of discretion to admit expert testimony regarding symptoms generally exhibited by a person with arteriosclerosis and its effect on a person's mental faculties when expert thereafter testified how the disease affected the individual involved in the case). Statements about unidentified people with unidentified injuries and complaints are irrelevant to prove whether Christina Yingling continues to suffer from her injuries, one of the issues at trial, and the trial court abused its discretion in admitting the testimony. *Wiedower v. ACF Indus., Inc.,* 763 S.W.2d 333, 335–37 (Mo.App. E.D.1988) (trial court did not abuse its discretion in granting a new trial upon concluding expert testimony was irrelevant and prejudicial in that it had no probative effect on the issue involved in the case).

Even if we assumed, *arguendo,* the testimony was somehow logically relevant, any probative value is far outweighed by its prejudicial effect to the Yinglings. *Edgell v. Leighty,* 825 S.W.2d 325, 327 (Mo.App. S.D. 1992).

> It is true that the sole fact that evidence is logically relevant does not require its admission; the evidence must also have some probative force over and above logical relevancy.... If evidence pertaining to collateral matters brings into a case new controversial matters which would result in confusion of issues, constitute unfair surprise, or cause prejudice wholly disproportionate to the value and usefulness of the offered evidence, it should be excluded.

*Id.* (quoting *Conley v. Kaney,* 250 S.W.2d 350, 353 (Mo.1952)). Dr. Neighbor's testimony was, in essence, a comment on a plaintiff's credibility; a statement that plaintiffs gener-

ally falsify their subjective complaints for the purpose of furthering their lawsuit and increasing their damages. Such a comment by an expert witness is inadmissible. *State v. Taylor,* 663 S.W.2d 235, 239 (Mo. banc 1984) ("[E]xpert opinion testimony is not admissible as it relates to credibility of witnesses."). Contrary to Hartwig's argument in his brief, Dr. Neighbor's follow-up testimony that Christina Yingling is "[m]ost likely a truthful patient" fails to diminish the prejudicial impact of the repeated references about plaintiffs involved in litigation and their prolonged subjective complaints.

Hartwig contends the opinion rendered by Dr. Neighbor regarding a plaintiff's subjective complaints were based on the doctor's personal knowledge and observations of patients over his many years as a physician. Although this may be true, Hartwig's argument misses the point. Hartwig overlooks the fact that the expert's testimony addressed people wholly unrelated to the instant case and essentially constituted the doctor's personal opinion as to whether the jury should believe a plaintiff, like Christina Yingling, when she testifies about her injuries and complaints. Dr. Neighbor did not show how the alleged "people involved in litigation who prolong their subjective complaints" had injuries and complaints similar to Christina, or how she otherwise might fall within the category of "people" to which he had referred. Dr. Neighbor improperly injected (upon inquiry from defense counsel) his personal opinion for no apparent reason other than to attack Christina's credibility and to bias the jury against plaintiffs. *See Dine v. Williams,* 830 S.W.2d 453, 457 (Mo. App. W.D.1992) (questions requesting expert medical witness to respond with own opinion were objectionable). Moreover, even if we could say the testimony had some logical relevance and some probative value, which we cannot, it would still be inadmissible because its prejudicial effect is wholly disproportionate to any value it might have.

Finally, Dr. Neighbor's testimony is an attempt to discredit plaintiffs for exercising their right to utilize the judicial system to seek recovery for their injuries. This court has previously held such testimony prejudi-

cial and reversible error. In *Carlyle v. Lai,* 783 S.W.2d 925 (Mo.App. W.D.1989), we determined testimony as to when an injured person first hired an attorney was prejudicial error because it constituted an attempt to discredit the plaintiffs as avaricious for seeking legal advice shortly following their son's death. *Id.* at 929–30. We stated:

> Accessing the legal system is normally not to be discouraged and, exercising one's right to utilize the legal system within established rules and procedures should normally not to (sic) be used to attempt to discredit a litigant with a jury. The Missouri legislature and Supreme Court have established the statutes and rules which govern a person's access to the courts. The right to seek the advice of counsel is so fundamental that, absent a justifiable reason and supporting evidence, counsel risk reversal when attempting to discredit a litigant by cross-examining him about the time and circumstances of his having consulted an attorney to discuss and exercise his legal rights.

*Id.* at 929. Having acknowledged the paramount importance placed on preserving an individual's freedom to exercise rights fundamental to or granted by the legal system, we held the injection of a party's exercise of her legal rights was an improper issue for trial and warranted reversal. *Id.* at 930. Likewise, in the case at bar, we must again conclude the witness' testimony improperly injected the Yinglings' exercise of their rights before the jury. Admission of Dr. Neighbor's testimony, as quoted, *supra,* was erroneous and extremely prejudicial. The trial court abused its discretion in not granting the Yinglings' motion for new trial. The error compels reversal and remand for a new trial.

 While our resolution of Point II is dispositive of the appeal, two of the Yinglings nine other points on appeal present issues which may arise on retrial. Therefore, judicial economy dictates that we address those matters at this juncture. In their Point IV, the Yinglings complain about the following statements made by defense counsel in closing argument.

What you have seen is a year-and-a-half event by those two lawyers to develop a lawsuit.

This has been a contrived thing since the moment they walked into the office (indicating [to plaintiffs' attorneys]) and that lawyer cut a check for 500 bucks to get the ball rolling.

It seems to me, when you look at this thing, that what happened is this wasn't just an accident; it was an opportunity for them to make some money, for her to come in and ask for $35,000. They are taking advantage of that accident like it was an opportunity. That lawyer seized it like it was a wad of money and said: Come on Christina, your coming with me, you go to the doctor, I don't care if he does the same test seven times and has the same result you keep going because, you know, those dollars start adding up, and we are going to convince the jury you've got a big case.

[Pertaining to plaintiffs' medical bills] The only evidence of payment is from the lawyers. He did run up a big bill. Those lawyers should not be rewarded for hiring a doctor that is expensive to do the same thing seven times over.

[Pertaining to Plaintiff Christina Yingling] [W]hen you are that age and you have the pressure of these people sitting behind you, saying, Christina, our lawsuit is going on, it's going on, make sure you say the right thing, make sure you did tell the doctor this or not, tell the lawyers half the story and not the full story, she is under a lot of pressure. She is under a lot of pressure to get her stories straight[.]

There was no evidence to support any of these arguments. Defense counsel certainly tried to *imply* to the jury that they occurred or were fact. However, there was no evidence of any of the matters asserted. Nevertheless, the Yinglings' counsel did not object to these statements during defense counsel's closing argument. The issue was presented to the trial court in Yinglings' Motion for New Trial, but the motion was denied. On appeal, the Yinglings request that this court review the statements, *supra,* for plain error pursuant to Rule 84.13(c).

Plain error review is discretionary with this court. Rule 84.13(c); *Krenski v. Aubuchon,* 841 S.W.2d 721, 728 (Mo.App. E.D.1992). In light of our conclusion that this action must be remanded for a new trial, we need not exercise our discretion and address whether defense counsel's statements constituted plain error. However, we will say it was prejudicial error. We reiterate the instruction and warning of the Missouri Supreme Court that arguments designed to appeal to local prejudices will not be tolerated. *Moore v. Missouri Pac. R. Co.,* 825 S.W.2d 839, 845 (Mo. banc 1992).

> Trials before juries ought to be conducted with dignity and in such manner as to bring about a verdict based solely on the law and the facts. Hence reckless assertions unwarranted by the proof and intended to arouse hatred or prejudice against a litigant or the witnesses are condemned as tending to cause a miscarriage of justice.... Due administration of justice demands that the jury in passing on such grave questions should not be allowed to have injected in a case, either by evidence, remarks of counsel, or even by the conduct of the judge, any extrinsic matter that tends to create bias or prejudice. The evil effect of such matters is not always cured by the ruling of the court withdrawing them from consideration or even by rebuking counsel. The red hot iron of prejudice has been thrust into the case; merely withdrawing it still leaves a festering wound. When there is no evidence to justify it is always improper for counsel to indulge in argument to the jury which tends towards the prejudice of one party or to the undue sympathy for the other.

*Calloway v. Fogel,* 358 Mo. 47, 213 S.W.2d 405, 409 (1948) (citations omitted).

We also must comment on Yinglings' Point I which alleges the trial court erroneously admitted evidence and statements pertaining to alcohol at trial. References to the presence and consumption of alcohol in the case at bar were completely irrelevant and admission of such statements was prejudicial and likely had a material impact on the damage award.

In an action to recover for personal injuries arising from an automobile accident, evidence of a party's drinking or intoxication is relevant and should be considered along with the other facts in evidence in determining the question of negligence *if* evidence exists which shows erratic driving or other factors which tend to show the party had an impaired physical condition at the time of the accident. *Stojkovic v. Weller,* 802 S.W.2d 152, 154 (Mo. banc 1991); *Strycharz v. Barlow,* 904 S.W.2d 419, 423 (Mo.App. E.D.1995); *Broderson v. Farthing,* 762 S.W.2d 548, 549 (Mo.App. W.D.1989). "Before the evidence of alcohol intake becomes relevant, there must be evidence to support an inference that the drinking caused the party to drive in an erratic manner and that erratic driving caused the collision." *Broderson,* 762 S.W.2d at 549. As to what constitutes "erratic driving," this court has stated,

> Erratic driving entails something more than mere negligence. It connotes the abnormal, peculiar, unaccountable and aberrant operation of the vehicle. Erratic driving is not the product of carelessness or of inattention but is conduct so heedless of circumstances as to be attributable to some impairment of faculties or of function.

*Id.* at 551. In the case at bar, before any evidence regarding alcohol could have been properly introduced, defense counsel must have shown Christina Yingling was driving in an erratic manner or otherwise exhibited an impaired physical condition. *Id.* at 549 (proponent of evidence regarding alcohol consumption has the burden of proving its admissibility). Moreover, "[s]uch evidence must exclude guesswork, conjecture and speculation as to the existence of the necessary facts to make the conclusion." *Id.*

The record is wholly devoid of any evidence showing Christina Yingling was driving in an erratic manner. Hartwig contends Christina did not have the vehicle headlights on which constituted driving in an "erratic" manner. Christina admitted she did not have her headlights on, and the evidence at trial included conflicting testimony whether the natural light available at the time of the accident warranted the use of

headlights. Nevertheless, we cannot say operating a vehicle without headlights within one or two minutes before or after official sunset was "abnormal or inexplicable heedlessness which characterizes vehicle operation as erratic." *Broderson*, 762 S.W.2d at 551 (alleged failure to yield right of way and failure to keep a careful lookout were at most negligence, not indications of erratic driving).

Moreover, the record reveals no evidence Christina Yingling exhibited signs she had consumed intoxicating beverages which impaired her physical condition. In fact, the record shows the contrary. Defense counsel admitted he had no evidence she had been drinking. In addition, pre-trial investigation and discovery revealed the investigating officer specifically "checked" Christina Yingling for signs of intoxication, and he found no odor of alcohol on her breath. So far as the officer could detect, Christina had not had a drink of alcohol. As a result, under the facts of this case, defense counsel could not satisfy his burden to show the admissibility of alcohol. Injection of this highly prejudicial evidence cannot reasonably be said to have been offered for reasons other than to incite the passions of the jury and prejudice them against the Yinglings. Its admission was error.

The judgment is reversed and the cause is remanded for a new trial.

All concur.